



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Kaitlin Bagby, a/k/a
Beth P.,[1]
Complainant,

v.

Denis R. McDonough,
Secretary,
Department of Veterans Affairs,
Agency.

Appeal No. 2023000321

Agency No. 200J-0589-2021105296

## DECISION

On October 21, 2022, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's September 26, 2022 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission REVERSES the Agency's final decision.

## ISSUE PRESENTED

Whether the evidence of record supports the Agency's conclusion that no discrimination was established on the bases of sex (female) and disability (pregnancy-related) regarding the provision of reasonable accommodation and charges against Complainant of being Absent Without Leave (AWOL)

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Registered Nurse (RN)-VN NS I, Level 2 at the Agency's VA Medical Center in Kansas City, Missouri.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

Complainant's first-level supervisor was the Assistant Nurse Manager (Supervisor 1). Complainant's second-level supervisor (Supervisor 2) was the Nurse Manager. Report of Investigation (ROI) at 64. Supervisor 2 became Complainant's immediate supervisor after Supervisor 1 transferred to another department.

Complainant is female. She stated that she had hyperemesis gravidarum, an uncommon condition related to pregnancy that resulted in abnormal nausea, vomiting, weight loss, and dehydration. Complainant stated that her physical impairment was first diagnosed during a previous pregnancy in 2004 and resurfaced in August 2021 during another pregnancy. Complainant described the impairment as an extreme, persistent nausea and vomiting during pregnancy, characterized by dehydration, weight loss, and electrolyte imbalances. She stated that the nausea was constant and not just occurring in the morning, but with vomiting occurring all hours of the day to include during hours of sleep. The lack of nourishment also caused her extreme fatigue, weakness, and dizziness. Complainant explained that the impairment affected any activity that required minimal to moderate amount of energy. She stated that any activity of daily living such as dressing, showering, walking, driving, and cleaning was taxing to complete. She also explained that the impairment affected eating, sleeping, and working. ROI at 65.

Complainant initiated EEO contact on August 20, 2021. On October 17, 2021, Complainant filed an EEO complaint alleging that the Agency discriminated against her and subjected her to harassment on the bases of sex (female) and disability (pregnancy-related) when:

1. On June 2, 2021, and June 22, 2021, Complainant was charged absent without leave (AWOL).

2. On July 11, 2021, July 19, 2021, July 28, 2021, and August 25, 2021, Complainant was charged AWOL.

3. On August 2, 2021, Supervisor 1 said she would continue charging Complainant AWOL, accused Complainant of being late, and told Complainant she could not wear t-shirts.

4. From August 2, 2021, through August 6, 2021, Complainant's request to switch shifts was denied.

5. On August 2, 2021, August 12, 2021, and August 15, 2021, Complainant was denied annual leave.

The Agency conducted an investigation into the complaint. The investigation revealed that Complainant was absent from work for various days between June 2021 and August 2021 due to the complications with her pregnancy, and Supervisor 2 charged her Absent Without Leave (AWOL) for her absences even with the submission of doctor's notes. Complainant asserted that this was her 2nd pregnancy of 2021 due to a miscarriage earlier that year. ROI at 244.

Complainant stated that Supervisor 2 was aware of her impairment because she told Supervisor 2 about it in person. Complainant stated that she also wrote emails to Supervisor 2 to request reasonable accommodations as a result of her impairment.

Complainant alleged that on July 11, 19, 20, and 28, 2021, and August 25th, 2021, she was charged AWOL. According to Complainant, Supervisor 2 only acknowledged that Complainant requested reasonable accommodation after she was charged AWOL. Complainant also alleged that Supervisor 2 accused her of having attendance problems since she started working at the Agency. ROI at 283-84. She stated that she was also charged AWOL on August 31, and September 9, 2021.

Complainant asserted that her sick leave allotment was depleted. She stated that on August 2, 2021, she requested annual leave for her past and future absences as a reasonable accommodation. She asserted that Supervisor 2 would not approve the request because the requested annual leave hours were not prescheduled. Complainant stated that Supervisor 2 advised her to request leave under the Family & Medical Leave Act (FMLA), but that she did not qualify because she had not worked at the Agency long enough. ROI 283-86. Complainant also stated that she wanted to switch shifts with a coworker (Coworker 1) from August 5, 2021, to August 12, 2021, but that Supervisor 2 denied the request because it would have placed Complainant in overtime. ROI at 70 and 106.

Complainant alleged that on August 2, 2021, Supervisor 2 emailed her to state that Supervisor 2 would continue charging her AWOL, accused her of being late, and reiterated that Complainant could not wear T-shirts. ROI at 283. Complainant stated that she was told in nursing orientation that they could wear T-shirts, and that other nurses (non-pregnant) could wear T-shirts, yet she was not able to. ROI at 3 and 321.

Supervisor 2 stated that she was not notified about Complainant's pregnancy and impairment until approximately July 14, 2021. According to Supervisor 2, she was not aware of the pregnancy or any claimed disability before that date. She also stated that she was never provided any medical documentation of restrictions or limitations for Complainant pertaining to a disability. ROI at 73-6 and 88. Supervisor 2 asserted that she allowed Complainant to use annual leave in lieu of sick leave, which was what Complainant requested. ROI at 265-66.

According to Supervisor 2, she met with Complainant on July 29, 2021, to discuss Complainant's recent AWOL charges. She stated that she asked Complainant if there was anything that Supervisor 2 should be aware of related to Complainant's absenteeism. She stated that Complainant told her that everything was fine, that she just had morning sickness, but that the medicine the provider gave her worked and she was feeling better.

Supervisor 2 asserted that on August 2, 2021, Complainant formally requested a reasonable accommodation in the form of annual leave. According to Supervisor 2, in response, she provided Complainant with the contact information for the reasonable accommodation specialist.

Supervisor 2 stated that she was unaware of whether Complainant pursued her reasonable accommodation request. She also asserted that if Complainant had disclosed that a medical condition or disability was the basis for requesting annual leave, the requests would have been handled differently.

According to Supervisor 2, there were policies enforced on June 2, 22 and July 11, 2021, but at the time, she was not aware Complainant was pregnant. Supervisor 2 stated that she notified Complainant on July 27, 2021, that she could not approve Complainant's annual leave request for August 11 and 12, 2021, and offered to discuss alternate dates with Complainant. Supervisor 2 also stated that Complainant was only charged AWOL once more after August 2, 2021, when, on August 25, 2021, Complainant was charged 4 hours of AWOL due to insufficient sick leave balance and Complainant did not request annual leave or any other leave option.

Supervisor 2 asserted that she approved Complainant's leave request for August 11, 2021, after initially denying the request. According to Supervisor 2, she assigned her Assistant Nurse Manager to cover Complainant's shift so Complainant could have the day off on August 11, 2021. She also stated that she approved Complainant's request to change shifts on August 12, 2021.

Supervisor 2 stated she did not deny Complainant's request to switch shifts on August 12, 2021, explaining that she emailed Complainant on August 6, 2021, to determine if the switching of shifts for August 12, 2021, was still going to happen. She stated that Complainant informed her that the switch was still happening, and there was no further communication by Complainant to her regarding trading of shifts. ROI at 82-4, 264, and 309-11. Coworker, with whom Complainant attempted to switch shifts from August 5, 2021, to August 12, 2021, stated that the first request that was submitted to Supervisor 2 was denied because it would have placed Complainant in overtime. He stated that after some discussion, they developed a new arrangement, and the shift switch was approved by Supervisor 2. ROI at 108-09.

A second coworker (Coworker 2) stated that there were issues at the Agency involving female staff over granting of leave. ROI at 98. According to Coworker 2, these issues included requiring a doctor's excuse for one day of absence from a female nurse of color, and not requiring it of a white RN. Coworker 2 also stated that others outside of Complainant's protected bases were given an exception concerning switching shifts, as overtime was why Supervisor 2 at first denied Complainant's shift changes. ROI at 100.

Supervisor 2 explained that the applicable policy in place required that employees requesting to change shifts must email their supervisor and that the change of shift did not require either employee to work overtime (over 60 hours in a 5-day work period). According to Supervisor 2, she previously would allow employees to switch shifts even if it caused the employees to work overtime, but this was deemed not fiscally responsible by higher management, and she was instructed not to approve requests that would lead to employees working overtime.

On September 14, 2021, Complainant resigned from the Agency to move with her family after her husband took a job transfer with orders for Germany.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation (ROI) and notice of her right to request a hearing before an EEOC Administrative Judge (AJ). In accordance with Complainant's request, the Agency issued a final decision (FAD) pursuant to 29 C.F.R. § 1614.110(b). The Agency concluded that Complainant failed to prove that the Agency subjected her to discrimination as alleged.

This appeal followed.

CONTENTIONS ON APPEAL

On appeal, among other things, Complainant contested the FAD, asserting that she provided medical documentation to support her reasonable accommodation request. Complainant alleges that the Agency was required to engage in the interactive reasonable accommodation process as soon as it knew she was pregnant. Complainant asserts that there were effective accommodations for her disability, including telework. According to Complainant, the Agency failed to prove that teleworking, or flextime, as originally requested, would have been ineffective. Complainant alleges that the Agency did not follow the timeline related to employees requesting an accommodation. According to Complainant, applicable Agency policy requires that accommodations be processed within ten days, and not to give a "due date" of medical documentation as it may take 90 days for employees to secure an appointment with a medical professional. ROI at 190-91 and Complainant's Brief at 14.

Complainant also alleges that the Agency did not properly investigate the allegation by Complainant and other staff members for alleged harassment of female staff by Supervisor 2 over granting leave. Complainant's Brief at 4 and 12.

Complainant raises claims of retaliatory harassment, alleging that Supervisor 2 only emailed Complainant a list of purported transgressions dating back to December 2020, after reasonable accommodations were requested, including being late a minuscule amount of 3 minutes that day. Complainant also insinuates that constructive discharge occurred, asserting that she had to leave the Agency two weeks earlier than planned as she would be forced to continue to work under an unaccommodating and hostile work environment.

In response, among other things, the Agency reiterates its stated reasons for the challenged actions. The Agency asserts that Complainant failed to prove, by a preponderance of the evidence, that the legitimate, nondiscriminatory reasons articulated by the Agency were pretext for discrimination.

The Agency also asserts that Complainant failed to establish a prima facie case of disability discrimination or harassment. According to the Agency, Complainant did not provide any evidence to support that there was a connection between the alleged hostile behavior and her membership in any of her alleged protected classes.

Regarding Complainant's allegation that the Agency did not follow the timeline related to employees requesting an accommodation, the Agency states that what VA Handbook 5975.1 indicates is, "[a]ll requests for accommodation should be processed as expeditiously as feasible. Requests from applicants should be expedited and processed within ten (10) calendar days. Requests from employees should ordinarily be processed within thirty (30) days, not counting the time waiting for medical documentation." ROI at 190. According to the Agency, at the time Complainant requested a reasonable accommodation, on August 2, 2021, she was not an applicant, but an employee and the ten-calendar day requirement did not apply to her. The Agency asserts that Complainant requested the reasonable accommodation on August 2, 2021, but had resigned from the Agency by September 14, 2021 and her supervisor began letting Complainant use annual leave in lieu of sick leave after the request was made. ROI at 63, 265-66, and 284. The Agency states that it followed policy.

Regarding Complainant's constructive discharge allegation, the Agency notes that she admitted that the reason that she resigned from the Agency was because she followed her spouse to Germany. This, the Agency asserts, would not qualify as a constructive discharge. The Agency also asserts that this claim was not raised until this appeal and should not be considered.

STANDARD OF REVIEW

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

ANALYSIS

*Preliminary Matter: Delayed FAD Issuance*

As an initial matter, Complainant has requested sanctions for the Agency's delay in issuing its final decision on her complaint. Our regulations require the Agency to issue its FAD within 60 days of receipt of such a request. See 29 C.F.R. §1614.110(b). However, the Agency did not issue its FAD to Complainant until September 26, 2022, some 206 days after her request. The Agency did not dispute this fact but asserts that Complainant did not show how the delay in issuance of the FAD prejudiced her or otherwise resulted in an unconscionable delay in justice.

Although the Agency failed to timely issue a final decision as required by our regulations, it did not act in a manner to warrant sanctions against it. See, e.g., Josefina L. v. Soc. Sec. Admin., 0120142023 (July 19, 2016), req. for recon. denied, EEOC Request No. 0520170108 (Feb. 9, 2017) (finding that the Agency's 571-day delay in issuing the decision did not warrant sanctions,

as complainant did not show she was prejudiced by the delay); <u>Abe K. v. Dep't of Agric.</u>, EEOC Appeal No. 0120141252 (Nov. 4, 2016) (declining to sanction an agency that issued a decision after approximately 326 days when complainant failed to show that he was prejudiced by the delay); <u>Jocelyn R. v. Dep't of Def.</u>, EEOC Appeal No. 0120152852 (Mar. 11, 2016) (citing <u>Vunder v. U.S. Postal Serv.</u>, EEOC Appeal No. 01A55147 (May 12, 2006) (declining to sanction an agency that issued a decision after approximately 371 days)); <u>Anthony M. v. Dep't of the Air Force</u>, EEOC Appeal No. 2019003380 (Sept. 22, 2020). Here, the Commission finds that there is no evidence that the Agency's delay in this case is attributable to contumacious conduct or bad faith. As such, under the specific circumstances present, we decline to sanction the Agency for its delay in issuing the final decision.

*Failure to Accommodate*

Under the Rehabilitation Act, an agency is required to make reasonable accommodation to the known physical and mental limitations of an individual with a disability unless the agency can show that accommodation would cause an undue hardship. 29 C.F.R. §§ 1630.2(o) and (p). In order to establish that she was denied a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability as defined by 29 C.F.R. § 1630.2(g); (2) she is "qualified" as defined by 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide a reasonable accommodation. <u>See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Enforcement Guidance on Reasonable Accommodation)</u>, No. 915.002 (Oct. 17, 2002).

Relevant to this case, the requirements of the Rehabilitation Act include a disability related to a pregnancy. While pregnancy itself may not be a disability, a pregnant employee may develop one or more impairments related to their pregnancy that qualify as a "disability" under the Act. As such, an employing agency may have to provide that employee with a reasonable accommodation for the pregnancy-related disability.

Once an employer becomes aware of the need for an accommodation of an employee's disability, the employer may engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. <u>See</u> 29 C.F.R. § 1630.2(o)(3) (2019). An Agency may choose among reasonable accommodations as long as the chosen accommodation is effective, and while the preference of the individual with a disability should be given primary consideration, an Agency has the ultimate discretion to choose between effective accommodations. <u>See</u> <u>Enforcement Guidance, supra</u>, at Q. 9.

Here, at the time of the alleged acts, Complainant was a pregnant federal employee with a pregnancy-related disability. Complainant had hyperemesis gravidarum, an uncommon condition related to pregnancies that results in abnormal nausea, vomiting, weight loss, and dehydration. <u>See</u> ROI at 255-56, showing a diagnosis of hyperemesis gravidarum and medical documentation that affected Complainant's daily work. She had also suffered a previous miscarriage due to the condition. The Agency does not dispute that Complainant was otherwise qualified for her position.

The record shows that Complainant needed and requested reasonable accommodation for her medical condition, including liberal leave, telework, maxi flex, and an exemption from certain dress code requirements.

The evidence shows Complainant made her condition and need for accommodation known to Supervisor 2 on July 14, 2021. Otherwise, there is no evidence that Supervisor 2 was made aware of Complainant's pregnancy or impairment before that date. On August 2, 2021, Complainant requested reasonable accommodation in the form of annual leave for her past and future absences because her sick leave allotment was depleted. ROI 283-86. In response to Complainant's annual leave request, Supervisor 2 explained to Complainant that annual leave had to be pre-scheduled. Complainant stated that her illness did not allow her to pre-schedule leave as she could not pre-plan what days she would be out sick or need medical care. ROI at 319.

Complainant provided doctors' notes. See ROI at 244-56. The following are some of the medical notes from a women's health care practice Complainant visited:

1. 6/2/2021: Seen in office note. ROI at 257.

2. 6/22/2021: Seen in office note. ROI at 258.

3. 7/11/2021: Seen in office note, mentions nausea and vomiting. ROI at 259.

4. 7/19/2021: Seen in office note. ROI at 260.

5. 7/20/2021: Return to work letter. ROI at 261.

6. 7/28/2021: Seen in office note. ROI at 262.

7. 8/25/2021: Excuse from work. ROI at 263.

In an August 2, 2021 email to Supervisor 2, Complainant confirmed that she had been placed on sick leave certification due to the need to take leave for medical reasons associated with her pregnancy. Complainant expressed the fear of losing her job, requesting from Supervisor 2 a reasonable accommodation to use annual leave in lieu of sick leave for medical reasons associated with her pregnancy. In the email, Complainant stated to Supervisor 2 that if there were additional flexibilities that Supervisor 2 could provide such as an adjustment of hours, flextime and/or telework in lieu of taking leave, Complainant would also like to pursue those avenues as an accommodation and would like to engage in an interactive discussion regarding her requests. Complainant added that she wanted to ensure that she was able to continue to work while pregnant without the threat of disciplinary action and AWOL.

Included in the record is VA Handbook 5975.1 Processing Requests for Reasonable Accommodation from Employees and Applicants with Disabilities. ROI at 173-212.

Applicable sections of the handbook authorize Supervisor 2, as the Designated Management Official (DMO) to engage in the interactive process and make decisions regarding requests for reasonable accommodation from employees. Contrary to those applicable sections of that handbook, Supervisor 2 did not engage in the interactive process with Complainant. Instead, Supervisor 2 continued to charge Complainant AWOL, reiterated that Complainant could not wear T-shirts after she became aware that Complainant was pregnant on or around July 14, 2021, and failed to request any accommodation on Complainant's behalf as she was authorized to do by Agency policy. Supervisor 2 also failed to enter Complainant's reasonable accommodation request information in RACS, the Agency's reasonable accommodation system. See ROI at 177 and 189.

Notably, Supervisor 2 asserted that she provided to Complainant contact information to the Reasonable Accommodation Coordinator, and to the staff who could assist Complainant with the FMLA process. Complainant however denied Supervisor 2's assertion, stating that Supervisor 2 instead suggested that Complainant apply for FMLA, despite her not qualifying as she had only been on the job for 8 months. ROI at 320. Supervisor 2 did not contest Complainant's denial. She stated that she asked Complainant to let her know if Complainant needed time off for doctor appointments. See ROI at 283-308 for email exchanges between Complainant and Supervisor 2. We do not find that the AWOL charges made before July 14, 2022, were improper as they were made before Supervisor 2 was aware of Complainant's disability and appear consistent with Agency policy. However, we find that Supervisor 2 failed to provide reasonable accommodation to Complainant after she became aware on July 14, 2021, that Complainant was pregnant and experiencing associated complications.

We also note Supervisor 2's statement that she was never provided any medical documentation of restrictions or limitations for Complainant pertaining to a disability. ROI at 75. We note that a July 11, 2021 medical note from a women's health care practice supporting Complainant's absences specifically references that she was seen for nausea and vomiting. While the record does not show that Supervisor 2 requested that Complainant provide documentation that would contain specific restrictions and/or limitations, the Commission has held that such documentation may not be needed when the need for an accommodation is obvious based on Complainant's report of her pregnancy and its complications. See Wade v. Dep't of Health and Human Serv., EEOC Appeal No. 0120180367 (Sept. 2019) (citing EEOC Enforcement Guidance at 6); Iliana S. v. Dep't of Justice, EEOC Appeal No. 0120081848 (Oct. 13, 2015) (finding that the complainant's need to use the elevator during a fire drill was obvious since her disability made it difficult to walk). Here, the record clearly demonstrates through responsive e mails that no later than July 29, 2021, Supervisor 2 was aware that Complainant was requesting accommodations involving the use of leave and schedule flexibilities due to the medical condition associated with her pregnancy. ROI 283-286.

Pursuant to Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. may receive compensatory damages for past and future pecuniary losses (i.e., out-of-pocket expenses) and non-pecuniary losses (e.g., pain and suffering, mental anguish) as part of this "make whole" relief. 42 U.S.C. § 1981a(b)(3).

The record also shows that at least by August 2, 2021, Complainant had suggested and requested telework and flex-time, and the Agency had her diagnosis. Yet, neither Supervisor 2 nor anyone at the Agency made even one good faith effort to discuss accommodation with Complainant. Instead, Complainant was kept on a sick leave certification (required doctor's note for each absence). Nor did the Agency argue or demonstrate that granting any of the accommodations Complainant requested on and/or after July 14, 2021, would have imposed an undue hardship on its program. Therefore, we find that from July 14, 2021 on, the Agency failed to accommodate Complainant.

Regarding her claims of sex-based disparate treatment and harassment, we the evidence does not support a finding of sex discrimination in this case. In her appeal brief, Complainant also raises for the first time a claim of a constructive discharge. First, we note the Commission long has held that it will not consider new claims raised for the first time on appeal. (See Norris C. v. USPS, EEOC Appeal No. 2021001755 (Jul. 2021) (citing Hubbard v. Dep't of Homeland Security, EEOC Appeal No. 01A40449 (Apr. 2004)); Jones v. Dep't of Veterans Affairs, EEOC Appeal No. 0120123526 (Feb. 2013). The record also shows that the reason Complainant resigned from the Agency was to relocate to Germany with her husband and family. The record is devoid of any evidence that Complainant, who had started the EEO process at the time, would have remained at the Agency but for any actions attributable to Supervisor 2.

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we REVERSE the Agency's findings of no discrimination in part, finding that the Agency failed to make good faith efforts to accommodate Complainant's disability after July 14, 2024, and instead discriminated against Complainant by continuing her sick leave restriction and charging her with AWOL. We, therefore, REMAND the matter to the Agency for compliance with the remedies specified in the ORDER herein.

## ORDER

The Agency shall take the following remedial actions:

1. The Agency shall expunge from Complainant's personnel record the AWOL charges incurred after July 14, 2021, and the sick leave restriction notice and permit Complainant to convert any such absence to approved leave or Leave Without Pay (LWOP).

2. Within ninety (90) calendar days of the date this decision is issued, the Agency shall complete a supplemental investigation concerning Complainant's entitlement to compensatory damages based on the finding of discrimination to determine the amount of compensatory damages due Complainant in a final decision with appeal rights to the Commission. The Agency shall pay this amount to Complainant within thirty (30) calendar days of the date of the determination of the amount of compensatory damages.

3. If there is a dispute regarding the exact amount of compensatory damages, the Agency shall issue a check to Complainant for the undisputed amount. Complainant may petition for enforcement or clarification of the amount in dispute. The petition for clarification or enforcement must be filed with the Compliance Officer, at the address referenced in the statement entitled "Implementation of the Commission's Decision."

4. Within ninety (90) calendar days of the date this decision is issued, the Agency shall provide at least four hours of interactive EEO training to Supervisor. The required training shall address management's responsibilities to provide reasonable accommodations in the workplace in accordance with the Rehabilitation Act. If Supervisor 2 has left the Agency's employ, the Agency shall furnish documentation of the departure date.

5. Within ninety (90) calendar days of the date this decision is issued, the Agency shall consider taking disciplinary action against Supervisor 2 with respect to our finding that she failed to take steps to accommodate Complainant after July 14, 2021, when she became aware that Complainant was experiencing a pregnancy-related disabling medical conditioin. The Commission does not consider training to be a disciplinary action. The Agency shall report its decision to the Commission and specify what, if any, action was taken. If the Agency decides not to take disciplinary action, then it shall set forth the reasons for its decision not to impose discipline. If Supervisor 2 has left the Agency's employ, the Agency shall furnish documentation of the departure date.

6. The Agency shall post a notice in accordance with the paragraph entitled, "Posting Order."

The Agency is further directed to submit a report of compliance in digital format as provided in the statement entitled "Implementation of the Commission's Decision." The report shall be submitted via the Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Further, the report must include supporting documentation of the Agency's calculation of back pay and other benefits due Complainant, including evidence that the corrective action has been implemented.

<u>POSTING ORDER</u> (G0617)

The Agency is ordered to post at the VA Medical Center in Kansas City, Missouri, copies of the attached notice. Copies of the notice, after being signed by the Agency's duly authorized representative, shall be posted **both in hard copy and electronic format** by the Agency within 30 calendar days of the date this decision was issued, and shall remain posted for 60 consecutive days, in conspicuous places, including all places where notices to employees are customarily posted. The Agency shall take reasonable steps to ensure that said notices are not altered, defaced, or covered by any other material. The original signed notice is to be submitted to the Compliance Officer as directed in the paragraph entitled "Implementation of the Commission's Decision," within 10 calendar days of the expiration of the posting period.

The report must be in digital format and must be submitted via the Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g).

## ATTORNEY'S FEES (H1019)

If Complainant has been represented by an attorney (as defined by 29 C.F.R. § 1614.501(e)(1)(iii)), she/he is entitled to an award of reasonable attorney's fees incurred in the processing of the complaint. 29 C.F.R. § 1614.501(e). The award of attorney's fees shall be paid by the Agency. The attorney shall submit a verified statement of fees to the Agency -- **not** to the Equal Employment Opportunity Commission, Office of Federal Operations -- within thirty (30) calendar days of receipt of this decision. The Agency shall then process the claim for attorney's fees in accordance with 29 C.F.R. § 1614.501.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0719)

Under 29 C.F.R. § 1614.405(c) and §1614.502, compliance with the Commission's corrective action is mandatory. Within seven (7) calendar days of the completion of each ordered corrective action, the Agency shall submit via the Federal Sector EEO Portal (FedSEP) supporting documents in the digital format required by the Commission, referencing the compliance docket number under which compliance was being monitored. Once all compliance is complete, the Agency shall submit via FedSEP a final compliance report in the digital format required by the Commission. See 29 C.F.R. § 1614.403(g). The Agency's final report must contain supporting documentation when previously not uploaded, and the Agency must send a copy of all submissions to the Complainant and his/her representative.

If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File a Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). **If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated.** See 29 C.F.R. § 1614.409.

Failure by an agency to either file a compliance report or implement any of the orders set forth in this decision, without good cause shown, may result in the referral of this matter to the Office of Special Counsel pursuant to 29 C.F.R. § 1614.503(f) for enforcement by that agency.

<u>STATEMENT OF RIGHTS - ON APPEAL</u>
<u>RECONSIDERATION</u> (M0124.1)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. <u>See</u> 29 C.F.R. § 1614.405; <u>Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614</u> (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit their request for reconsideration, and any statement or brief in support of their request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit their request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. <u>See</u> 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). <u>See</u> 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files their request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. <u>See</u> 29 C.F.R. § 1614.604(f).

2023000321

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0124)

This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the Agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by their full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

May 6, 2024
Date