IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KAITLIN BAGBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-00745-DGK |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| VETERANS AFFAIRS, et al., | ) |
| | ) |
| Defendants. | ) |

## INITIAL STANDING ORDER FOR ALL CIVIL CASES

This case has been assigned to Judge Greg Kays. Upon assignment of any new civil case, the Court issues this Initial Standing Order (the "ISO"). The ISO establishes the rules litigants must follow in litigating cases before the undersigned and are meant "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

All attorneys and unrepresented parties shall carefully study and comply with the ISO along with the Federal Rules of Civil Procedure and the Western District of Missouri's Local Rules (the "Local Rules"). Failure to comply with the ISO may result in the Court imposing sanctions, including but not limited to monetary payments, dismissal of claims or cases, entry of default judgment, or other appropriate sanctions. The Court may also consider failure to comply with the ISO in deciding whether—or to what extent—to extend any case deadlines.

The ISO is meant to help the parties avoid practices that routinely lead to disputes and waste judicial resources. The parties should not use the ISO to create disputes. The parties shall work together in good faith to follow not only the letter of the ISO, but also its spirit.

## I. COMMUNICATION WITH THE COURT AND ITS STAFF

The following rules are meant to avoid ex parte communications and to ensure all substantive communications are captured within the case record.

### 1. No Ex Parte Communications

In communicating with the Court or its staff (law clerks, the courtroom deputy, or the court reporter), the parties shall ensure that the opposing party or attorney is (1) copied on all emails, (2) present in court or on the phone when all statements are made to the Court or its staff, and/or (3) served with all filings. The only exceptions to this rule are ex parte communications permitted under the Federal Rules of Civil Procedure, Local Rules, or other federal laws (e.g., certain ex parte motions, in camera review, etc.) as well as any emergency ex parte communications (e.g., last-minute notification that a party will miss a hearing/trial, etc.).

### 2. No Calling Chambers Absent Emergencies

Parties and their attorneys shall refrain from telephoning chambers unless there is an urgent situation (e.g., an attorney is ill and will miss a hearing, etc.). Scheduling hearings should be done via email with the courtroom deputy. The parties should not call chambers to solicit legal advice (e.g., what should be filed, etc.) or seek an update on a case.

### 3. Limitations on Emails

Emails from the parties and their attorneys to the Court and its staff should be limited to discovery dispute issues (discussed below), scheduling hearings, scheduling courtroom access for trial preparation purposes, proposed orders, proposed jury instructions, and last-minute communications. Parties with ECF filing questions (e.g., what should be filed, how something should be filed, or how a misfiled document should be corrected) should consult the materials on the Western District of Missouri website or contact the Clerk's Office at (816) 512-5000.

### 4. All Other Written Communications Should be Filed in ECF

Aside from the above, all other written communications should be made as a filing or motion submitted via ECF or the Clerk's Office. This ensures all substantive communications are made and preserved in the record.

## II. MOTION AND BRIEFING REQUIREMENTS

The Court often receives motions and briefs that fail to cite binding legal authority, contain improper citations, and/or incorporate arguments by reference to evade page limits. Such practices require the Court to request supplemental briefing, conduct legal research for the parties, deny motions without prejudice, find waiver of arguments, and, in rare cases, impose sanctions. They also thwart the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. The following guidelines are intended to eliminate these practices. Failure to follow these guidelines may result in the denial of a motion, striking of a brief, a finding that an argument has been waived, and potentially the imposition of sanctions.

### 1. Applicability

The following briefing rules apply to all motions and briefing <u>except</u> those on routine motions for extensions of non-scheduling order deadlines, pro hac vice admittance, protective orders, and other similar motions.

### 2. Citing Binding Legal Authority

In making its rulings, this Court relies almost exclusively upon binding legal authority from the Eighth Circuit or Supreme Court. There are few issues that come before this Court that the Eighth Circuit or Supreme Court have not addressed. Yet parties sometimes fail to find and/or cite binding, on-point precedent. As the Eighth Circuit has noted, however, "[i]t is not this court's job to research the law to support a[] [party's] argument." *United States v. Guzman-Tlaseca*, 546

3

Case 4:25-cv-00745-DGK    Document 3    Filed 09/25/25    Page 3 of 12

F.3d 571, 578 (8th Cir. 2008) (first alteration in original) (quotation omitted).

For every motion and brief, the filing party shall conduct legal research and primarily cite binding, on-point authority—e.g., Eighth Circuit cases, Supreme Court cases, or state supreme court cases on state law issues—in making legal arguments. Even in instances of applying Missouri or other state law, there are often controlling Eighth Circuit cases that have already addressed the issue. The parties shall find and cite those cases.

Of course, the parties may cite persuasive authority—e.g., other district court decisions from this district (including the undersigned's), out-of-district or out-of-circuit cases, intermediate state court cases, secondary sources, etc.—to supplement their binding authority or when no binding authority exists. <u>If no binding authority exists on a particular issue, the party shall affirm in a footnote that they thoroughly searched for binding, on-point authority and none exists</u>.

### 3. Legal Citations

All citations must be precise and accurate. The parties shall include pinpoint citations to the precise page number that supports their argument or factual assertion. The Court prefers the parties adhere to The Bluebook® for citations, except to the extent the Local Rules mandate otherwise.

### 4. No Briefs, Motions, or Other Filings with Entire Footnote Citations

The Court periodically receives briefs that include all citations in footnotes. The Court finds this citation form to be distracting and inefficient because the Court must constantly toggle between footnotes and the text of the argument to see whether—and to what extent—there is legal or factual support for the party's assertion. The parties shall not use this form of legal citation. The parties may use footnotes to make subsidiary points and include pinpoint citations for these points in the footnote, but the parties should not put all citations in footnotes.

4

Case 4:25-cv-00745-DGK   Document 3   Filed 09/25/25   Page 4 of 12

5. **No Incorporation by Reference**

Parties often incorporate by reference arguments or factual recitations from prior briefs or motions. This is not acceptable since it is often used to evade page limits. The parties shall not incorporate by reference any argument or factual recitation from prior briefs or motions. This does not prevent a party from referring to previous arguments it made for the purposes of establishing background information, notice of a prior argument or issue, or that a party did not respond to an argument made in an opening brief. Nor does it prevent a party from cross-referencing within a document, citing to contemporaneously filed documents (e.g., exhibits, statement of undisputed facts, etc.), or summarizing/citing pleadings (e.g., complaints, answers, etc.).

## III. DISCOVERY RULES

The Court sees a variety of recurring discovery abuses that stall discovery and waste resources. The following rules and procedures are meant to curb these abuses. The highlighting of certain rules below is not meant to diminish the importance of complying with *all* the Federal Rules of Civil Procedure and Local Rules. Before conducting *any* discovery, the parties should carefully review the Federal Rules of Civil Procedure, the Local Rules, and the interpretative caselaw that governs the specific type of discovery.

1. **Discovery Status Report**

The Court expects the parties to diligently conduct discovery from the inception of the case until the discovery cutoff. Some litigants, however, wait until late into the discovery period to begin conducting discovery in earnest.[1] The Court will not grant a motion to extend discovery

---

[1] The Court often hears from the parties that they have not, or are not, conducting discovery because they are "exploring possible settlement and do not want to incur unnecessary litigation costs." While understandable, this is not an acceptable reason to refrain from conducting discovery.

where the moving party has not been diligent in pursuing discovery. *See* Fed. R. Civ. P. 16(b)(4); L.R. 16.3; *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (good cause standard); *Kirk v. Schaeffler Group USA, Inc.*, No. 13-CV-05032-DGK, ECF No. 70 (W.D. Mo. July 28, 2014) (denying motion to amend the scheduling order to extend the discovery deadline because plaintiff failed to serve discovery until the day before the deadline expired).

To ensure discovery is occurring, the parties shall file a joint status report exactly 120 days after the Court enters the scheduling order. The parties shall include the following in the status report: (1) the status of all written discovery, including what type of discovery was served and responded to, when it was served and responded to, what written discovery remains to be served, and approximately when it will be served; (2) the status of all document productions, including when the documents were produced, how many were produced, and when any remaining documents will be produced; (3) the status of depositions, including what depositions have been taken or noticed and how many depositions remain to be taken or noticed; (4) an affirmation that all required certificates of service have been—and will continue to be—filed with the Court; and (5) the status of any settlement negotiations.

The Court expects the parties will have made significant progress in discovery by the time they file the status report. At a minimum, the parties should have completed initial disclosures (when applicable), exchanged and responded to at least a first round of written discovery (e.g., interrogatories, requests for production, requests for admission, etc.), produced the bulk of requested documents, taken some depositions, and noticed most of the remaining depositions. <u>The parties shall not use the status report to argue about discovery disputes</u>. In addition to the status report, the parties shall also file certificates of discovery to the extent they are required by the Federal Rules of Civil Procedure and/or Local Rules.

6

Case 4:25-cv-00745-DGK    Document 3    Filed 09/25/25    Page 6 of 12

Approximately one week after the status report is filed, the Court will hold a telephonic status hearing on the case to discuss any issues it perceives from the status report. In some instances, however, the Court may hold the status hearing in person. <u>The parties shall not use the status hearing to argue about discovery disputes.</u> Failure to make substantial progress in the case by the status report deadline may result in the Court unilaterally setting interim discovery deadlines or even imposing sanctions.

### 2. Deposition Scheduling

The Court expects the parties to determine mutually agreeable dates for depositions well before the close of discovery. But on occasion a party engages in gamesmanship to delay or avoid depositions or to extend the discovery period. For example, the deponent may not provide any dates in response to multiple requests for dates by the serving party, or the deponent will string along the serving party by claiming they are trying to find deposition dates when they are not. On the other hand, the serving party may wait until late into the discovery period to contemporaneously serve many deposition notices and then try to force the deponents to sit on unilaterally noticed dates right before the discovery deadline. This leads to unnecessary delays in the discovery process, avoidable disputes, and unnecessary discovery extensions.

To avoid these problems, the Court expects the parties to space depositions throughout the discovery period so they are not being noticed or taken all in the last month of discovery.

### 3. Serving Proportional Discovery

The Court has observed parties sometimes serve facially overbroad or burdensome discovery as a negotiation tactic. For example, they may serve an unnecessarily large number of discovery requests or deposition topics—many of which may be borderline irrelevant—knowing they will eventually agree to forgo certain unimportant requests or topics in exchange for getting

discovery they truly need from important requests. This practice is inefficient and leads to unnecessary disputes.

To avoid these issues, the party serving discovery shall carefully study and comply with the proportionality standards under Federal Rule of Civil Procedure 26(b)(1)-(2) and its interpretive caselaw. This means the party serving discovery should in the first instance only seek discovery that is truly "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

### 4. No Boilerplate Objections in Written Discovery

The Federal Rules of Civil Procedure are clear that objections to written discovery must be stated with specificity. *See* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B), 36(a)(5). This means parties cannot respond to written discovery with "boilerplate objections," that is, "an objection that 'merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.'" *See Brown v. Kansas City*, No. 20-CV-00920-DGK, 2022 WL 15045965, at *2 (W.D. Mo. Oct. 26, 2022) (quoting *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 441 (D. Utah 2020)). For instance, a boilerplate objection would be one "that asserts a request is 'overly broad' or 'irrelevant' without explaining why[.]" *Id.*; *see also Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017). Despite this clear prohibition, some litigants continue to answer discovery with boilerplate objections.

The parties shall not include any boilerplate objections in their discovery responses. If they do, the Court will find them to be waived. The parties shall only raise objections that are clearly applicable and stated with specificity. For example, if a party believes a request is "unduly burdensome," it must specifically explain how the request is unduly burdensome and how it would

be harmed if forced to respond as written. The same is true for all other forms of objections. The parties shall carefully read the rules and caselaw governing written discovery requests and comply with them.

### 5. No Speaking Objections

At depositions, the defending attorney shall not use speaking objections, objections calculated to coach the witness or shape his or her testimony, or objections designed to impede the fair examination of the witness. For example, after a question has been asked, an attorney might instruct the client to, "answer—if you know," suggesting the witness should answer they do not know. As Federal Rule of Civil Procedure 30(c)(2) makes clear, all deposition objections "must be stated concisely in a nonargumentative and nonsuggestive manner." For example, if a defending attorney believes a question is "vague," she shall simply say "objection; form" or "objection; vague." If the examining attorney wants clarification of precisely why the question is perceived to be "vague" (e.g., if the examiner wants to cure the question on the spot), then he can ask the defending attorney to expound upon *why* it is vague. Only then can the defending attorney provide a more specific and in-depth explanation as to the objection beyond "objection; form" or "objection; vague."

If the Court learns of any such deposition abuses, it may impose sanctions against the offending party or attorney after the deposition concludes. These sanctions may include ordering another deposition, ordering the defending party to pay attorneys' fees and/or costs for the initial deposition, and/or ordering the defending party to pay attorneys' fees and/or costs for the court-ordered second deposition.

6.  **Motions to Stay**

As is made clear in the Local Rules, the pendency of a dispositive motion such as a motion to dismiss does not automatically stay discovery obligations. *See* L.R. 26.1(b). Unless the Court grants a motion to stay, the parties shall continue conducting discovery and other case obligations.

7.  **Discovery Dispute Process**

The Court will not entertain any discovery motion absent full compliance with Local Rule 37.1. Any discovery motion filed without complying with Local Rule 37.1 will be summarily denied. The parties must also follow the additional procedures and rules below.

   a) **Scheduling a Telephone Conference**

A party seeking a telephone conference with the Court to resolve a discovery dispute shall email the Courtroom Deputy, Ms. Tracy Strodtman, at Tracy_Strodtman@mow.uscourts.gov. The opposing counsel or party shall be copied on this email. The email should provide a short explanation of the dispute and certify compliance with Local Rule 37.1. The Court may then schedule a telephone conference to discuss the discovery dispute with the parties.

   b) **Position Memorandum**

At least three days (72 hours) before the telephone conference, each party shall file a position memorandum. The body of this memo shall not exceed 500 words, unless the Court prescribes a longer limit. This memo shall describe the underlying facts of the dispute, the party's arguments relative to the dispute (including pinpoint citation to relevant Eighth Circuit caselaw), and a discussion of the opposing party's anticipated arguments. The parties should attach as an exhibit the interrogatory, request for production, or other discovery request that is in dispute. At least two days (48 hours) before the telephone conference, each party may file a reply memo not to exceed 300 words. The parties should include their best arguments in their initial

memorandum. In drafting their briefs, the parties should be mindful of the significant changes to the Federal Rules of Civil Procedure since 2015, and they should cite caselaw that interprets the current version of the Federal Rules of Civil Procedure.

### c) Cancelling the Telephone Conference

After reviewing the memoranda, the Court may cancel the telephone conference and rule on the existing record without hearing argument from the parties.

## IV. SETTLEMENT AND DISMISSALS

The Court encounters several recurring issues involving settlement and dismissals, including the parties failing to timely notify the Court of settlement and filing deficient stipulations or requests for dismissal. These practices waste judicial resources. The following rules are designed to avoid these problems.

### 1. Settlement Notification

Within twenty-four (24) hours of the parties reaching a settlement, they must file a notice that the parties have settled. This notice shall identify a date by which time the parties will file a stipulation of dismissal. The Court expects most cases to be dismissed within forty-five (45) days of settlement.[2]

### 2. Settlement Status Report

One month before the pretrial conference, the parties shall file a joint status report that outlines: (1) the parties' previous attempts at settlement; (2) if settlement negotiations are ongoing and any hindrances there may be to settlement; (3) the parties' estimation of the likelihood that the case will settle; and (4) whether a settlement conference with a magistrate judge would be helpful in resolving the case.

---

[2] This 45-day deadline does not apply to class action or collective action cases.

### 3. Dismissals

Before filing a motion to dismiss or a stipulation of dismissal under Federal Rule of Civil Procedure 41, the party or parties shall review and comply with Rule 41 and any caselaw interpreting it. Dismissals sought pursuant to Rule 41 shall state with particularity the subsection that applies.

## V. SEALING AND REDACTIONS

Because there is a strong common law presumption that judicial records are open to the public, *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978), the Court grants motions to seal or redact documents sparingly. That said, if a party wishes to seal or redact a document or filing, it must follow the procedures outlined in the CM/ECF Administrative Guide on the Western District of Missouri website. *See* CM/ECF Administrative Guide, *available at* https://www.mow.uscourts.gov/district/rules (located under the "Local Rules & Procedures" drop-down tab and then further under the "Procedures" drop-down subtab). The motion filed with the Court must cite caselaw indicating the material sought to be sealed or redacted can be shielded from public access. The Court has issued several published opinions outlining the stringent standard for sealing or redacting various documents, and the parties should review those opinions before filing a motion to seal.

**IT IS SO ORDERED.**

Date: September 25, 2025           /s/ Greg Kays
                                   GREG KAYS, JUDGE
                                   UNITED STATES DISTRICT COURT