IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KAITLYN BAGBY, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Case No. 4:25-CV-00745 |
| ) | |
| DOUGLAS A. COLLINS, Secretary ) | |
| UNITED STATES DEPARTMENT OF VETERAN ) | |
| AFFAIRS, ) | |
| ) | |
| DEFENDANT. ) | |

**Plaintiff's Opposition to Defendant's Motion to Dismiss**

**COMES NOW** Plaintiff, Kaitlyn Bagby, and hereby opposes Defendant's Motion to Dismiss Counts I through III of Plaintiff's complaint on the basis that Defendant did not issue the FAD on those counts until January 12, 2026. Because more than 180 days had lapsed on the processing of this complaint prior to the filing of Plaintiff's complaint in this matter, her complaint was timely filed and the issues found in Counts I, II and III are before this court.

INTRODUCTION

Kaitlyn Bagby worked as a Registered Nurse – VN NS 1, Level 2, Step 8 at the U.S. Department of Veterans' Affairs, Kansas City VA Hospital from December 21, 2020 until she resigned / was constructively discharged on September 14, 2021. Her first line supervisor was Benjamin Wilson, Nurse Manager and her second line supervisor was Mary Wydick, Assistant Nurse Manager.

Ms. Bagby was transferred to a different department during the first few months after she started working at the KCVA, resulting in Mary Wydick becoming her first line supervisor. In 2004, Plaintiff had a pregnancy in which she was diagnosed with hyperemesis gravidarum. In 2021, that physical impairment occurred during a subsequent pregnancy. Hyperemesis

gravidarum is a rare condition that results in extreme, persistent nausea and vomiting during pregnancy. It causes dehydration, weight loss, electrolyte imbalance and places the child at risk of pre-birth injury and death. The nausea and vomiting occurs not just during the morning but all hours of the day and night. It causses lack of sleep, lack of nourishment, extreme fatigue, weakness and dizziness.

Hyperemesis gravidarum affected Ms. Bagby's daily life activities. All activities of daily living were impacted including dressing, showering, walking, driving, cleaning, eating, sleeping and working. Ms. Bagby told her supervisor of the illness she was experiencing in person, she also requested reasonable accommodation via email and she submitted medical documentation concerning her condition. Despite Ms. Wydick's knowledge of Ms. Bagby's disability, she engaged in behavior that discriminated against Ms. Bagby.

Ms. Bagby was charged approximately 24 hours of AWOL between June 2 and June 22, 2021. She was charged that because she had exhausted her sick leave balance. Ms. Bagby requested the use of annual leave in order to cover the requested time off to deal with her illness. Those requests were refused by Ms. Wydick.

Ms. Bagby never left work without permission from her supervisor and every time she was absent, she called into the VA Call-In line to request leave. Calls to this line were directly reported to her supervisor. Ms. Wydick charged Plaintiff AWOL instead of providing her with a reasonable accommodation. Other Federal employees were willing to donate sick leave to her under the leave donation program. To qualify for the program, an employee must exhaust all sick and annual leave. Because Ms. Wydick did not allow her to use and exhaust her annual leave, Ms. Bagby could not qualify for this program.

On May 6, 2021, Ms. Bagby was placed on a Sick Leave Certification that required Ms. Bagby to provide medical documentation from a physician for each sick leave request. All of Plaintiff's absences were associated with the hyperemesis gravidarum. Even after Plaintiff explained the circumstances and provided the medical documentation of her disability, her supervisor continued to charge her AWOL for her absences. Additionally, Plaintiff's supervisor inaccurately accused Plaintiff of being late on occasions in which that did not occur and she prevented Plaintiff from wearing T-shirts although others were allowed to do so. The T-Shirts were necessary to accommodate Ms. Bagby's pregnancy. Ms. Bagby suggested reasonable accommodations including allowing her to use annual leave for her past and future absences necessitated by her disabling condition, to switch shifts with a co-worker, to allow her to wear T Shirts as her non-pregnant co-workers did.

Plaintiff needed and requested reasonable accommodation for her medical condition, including liberal leave, telework, maxi flex and an exemption from certain dress code requirements. Plaintiff's co-workers observed that non-disabled people were allowed to switch shifts – even if it caused overtime – but that Plaintiff and persons of color were not so allowed. Plaintiff's husband was transferred to Germany. Plaintiff desired to transfer to a governmental facility in Germany. However, because of the harassment and discrimination she endured, she resigned her position – causing her to be constructively discharged.

The VA Handbook 5975.1 requires a "Designated Management Official" to engage in the interactive process and make decisions regarding requests for reasonable accommodation. Contrary to those provision, Ms. Wydick did not engage in that interactive process. Instead, she continued to charge Ms. Bagby with AWOL, rrefused to allow her to wear Tshirts and failed to request any accommodation on Plaintiff's behalf as she was required to do by Agency policy.

Ms. Wydick also failed to enter Ms. Bagby's reasonable accommodation request into the Agency's reasonable accommodation system, RACS. The EEOC / OFO found that Ms. Wydick failed to provide reasonable accommodation to Ms. Bagby when she was aware of Ms. Bagby's pregnancy and associated complications. The EEOC / OFO also found pretextual Plaintiff's supervisor's claim that she did not accommodate Plaintiff because she never provided medical documentation of restrictions or limitations. The EEOC found pretext because the medical documentation in question established that Plaintiff was seen for nausea and vomiting and when the need for accommodation is obvious, documentation of restrictions or limitations is not necessary.

The EEOC / OFO also found that the record is replete with requests for accommodation but neither Ms. Wydick nor anyone at the agency made any good faith effort to discuss accommodation with Ms. Bagby. The Agency did not argue or demonstrate that granting any accommodation would have imposed an undue hardship on its program. Accordingly, the EEOC / OFO found that the Agency failed to accommodate Ms. Bagby.

The EEOC / OFO specifically determined that the Agency discriminated against Ms. Bagby by continuing her sick leave restriction and charging her with AWOL after knowing that her condition and request for accommodation. The EEOC ordered the Agency to expunge from Ms. Bagby's personnel record the AWOL charges she received after July 14, 2021, the sick leave restriction notice, and permit Ms. Bagby to convert those absences to approved leave or leave without pay. The EEOC ordered the Agency to complete a supplemental investigation regarding Ms. Bagby's compensatory damages based on the finding of discrimination with payment to occur within 30 calendar days of the date of the determination of the amount of compensatory

damages.  In the event of a dispute in the exact amount of compensatory damages, the Agency was to issue a check to Complainant for the undisputed amount.

Within 90 calendar days of the date of the decision (May 6, 2024), the Agency was to provide training to Ms. Wydick and within 90 days, the Agency was to consider tking disciplinary action regarding Ms. Wydick for failing to accommodate Ms. Bagby.  The Agency did not fully implement this decision including payment of any compensatory damages or attorneys fees.  Ms. Bagby timely requested enforcement and, separately, she appealed the amount of compensatory damages awarded by the Final Agency Decision.  On June 25, 2025, the Agency issued an order indicating that the Agency was in substantial compliance but did not address the compensatory damages issue or the issue of attorney's fees.  Plaintiff timely filed her complaint on September 22, 2025.

At the time Ms. Bagby filed this lawsuit, the Agency had not issued a Final Agency Decision on her appeal of the merits of her claims for failure to accommodate her disability, discrimination based on sex and disability and constructive discharge.  More than 180 days had passed so Ms. Bagby timely filed this lawsuit.  On January 13, 2026, the Agency finally issued its Final Agency Decision, dismissing the remaining allegations in her EEO complaint because she filed this lawsuit.  A copy of the January 13, 2026 FAD is attached hereto as Exhibit A.  That final dismissal gave Plaintiff 90 days in which to file a civil action.  *See Ex. A, p. 4.*

*Procedural History*

This case has been through a tortuous procedural history.  Ms. Bagby has filed only one EEO complaint.  It is complaint No. VA 200J-0589-2021105296, filed October 17, 2021.  That complaint is attached to Plaintiff's Complaint on file with this court.  On September 26, 2022, the Agency belatedly issued their Final Agency Decision (FAD) finding that she was not

subjected to disability discrimination or sex discrimination, and therefore her constructive discharge claim failed. Ms. Bagby filed a timely appeal of the September 26, 2022 FAD on October 21, 2022. Thereafter, the Equal Employment Opportunity Commission / Office of Federal Operations (OFO) issued a decision on May 6, 2024, reversing the findings of the Agency's FAD. In the first paragraph of the Decision, the EEOC / OFO states: "[T]he Commission REVERSES the Agency's final decision." Pltfs. Complaint, Ex. 1, p. 1

The OFO found that the Agency had discriminated against Ms. Bagby based on her pregnancy – related disability, failing to accommodate that disability. Pltfs. Complaint, Exhibit 1, p. 10.[1] The EEO required the Agency to complete a supplemental investigation on Plaintiff's claims for compensatory damages. Pltfs. Complaint, Ex. 1, p. 10. Additionally, since Plaintiff was represented by counsel during the OFO found that Plaintiff was entitled to reasonable attorneys' fees, with a verified fee statement to be submitted to the Agency within 30 days of the order. Pltfs. Complaint, Ex. 1, P. 1. Plaintiff also complied with that deadline.

The Agency filed an immediate Request for Reconsideration of the May 6, 2024 OFO decision and on October 15, 2024, the OFO denied that request. The Agency conducted the compensatory damages supplemental investigation in accordance with the May 6, 2024 order but never issued an FAD or otherwise comply with the EEOC order. Plaintiff filed a Petition for Enforcement of the Order on January 22, 2025. Thereafter, on March 12, 2025, the Agency issued a Final Agency Decision on the issue of compensatory damages, awarding Plaintiff $12,000.00. Cplts. Complaint, Ex. 2 at 8. Ms. Bagby timely appealed the FAD to the EEOC on April 14, 2025, while the earlier petition to enforce was still pending.

---

[1] Plaintiff makes reference to the materials filed with her original complaint, using those exhibit numbers to avoid confusion by attaching them to this filing. At the time of the filing of the original complaint, the final FAD had not yet been received. Accordingly, it is designated as Exhibit A and attached hereto.

On June 25, 2025, the EEOC issued a Decision on the Petition for Enforcement and closed both the Petition for Enforcement and, it appears, the appeal regarding compensatory damages. Closure of the compensatory damages appeal was in error but the EEOC provided no appellate rights for that closure. Cplts. Petition, Ex. 3, 4. Because there were no appeal rights and the Petition for Enforcement was also closed, Plaintiff brought this action within 90 days of the issuance of the closure. At the time Plaintiff filed her cause of action, more than 180 days had elapsed, making her filing timely even though the Agency had not yet issued an FAD on the remaining claims – only on the compensatory damages supplemental investigation. The Agency issued its FAD on the remaining claims on January 13, 2026. *See Exhibit A.* Accordingly, Plaintiff's action in this matter is timely.

<u>*Legal Argument*</u>

1. *Legal Standards*

When ruling on a motion to dismiss, the court must take the allegations of the complaint as true, construing the complaint and all reasonable inferences in the light most favorable to the plaintiff. *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 22009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim for relief that is plausible on its face. *Wilson v. Ark. Dep't of Human Servs.,* 850 F.3d 368, 372 (8th Cir. 2017).

2. *Exhaustion of Administrative Remedies*

Defendant argues that Plaintiff failed to seek timely judicial review after the EEOC issued its May 6, 2024 on her complaint of discrimination. The Agency did file a Motion to Reconsider, which was denied. The Agency did *not* file an FAD on complaint until January 13, 2026 and it did not comply with the EEOC order. 29 C.F.R. § 1614.407 provides that a

complainant who has filed a complaint under Title VII, the ADEA, the Rehabilitation Act and the Pregnant Workers Fairness Act may file a civil action in the United States District Court (a) within 90 days of the agency final action; b) after 180 days from the date of filing an individual action if the agency final action has not been taken; c) within 90 days of the receipt of the Commission's final decision; d) after 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission. *See* 29 C.F.R. § 1614.407 (a-c). *See Augustus v. Locke,* 699 F.Supp.2d 65, 2010 U.S.Dist. LEXIS 29727 (D.D.C. 2010)(claimant may file civil action after 180 days from date of filing complaint if there has been no final agency action).

In this matter, the Agency did not issue an FAD on Plaintiff's complaint until January 13, 2026. At the time that the FAD issued, Plaintiff had already filed her lawsuit as she was allowed under Sections b (180 days from the date of filing the complaint without agency action) and Section C (within 90 days of the receipt of the Commissions final decision). Pursuant to 29 C.F.R. § 1614.503(g), plaintiff is authorized to file a civil action to compel the agency's compliance or bring a *de novo* civil action. Where, as here, the FAD was not issued within 180 days of the initial complaint, nor within 180 days of the EEO / OFO decision, nor within 180 days of the dismissal of the appeal and enforcement action, Plaintiff has timely filed her complaint on all of the issues that should properly have been in the Final Agency Decision.

Because Plaintiff has exhausted all available remedies in the administrative process, none of the causes of action in her complaint should be dismissed based on timeliness.

Respectfully submitted,

*/s/ Rebecca M. Randles*

Rebecca M. Randles    MO #40149
RANDLES MATA, LLC
851 NW 45th Street Suite 310
Kansas City, Missouri 64116
(816) 931-9901 (816)
931-0134 (FAX)
rebecca@randlesmatalaw.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on January 29, 2026, I electronically filed the foregoing with the clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM / ECF system and further served the foregoing by email to the following:

Jeffrey P. Ray
First Asst. U.S. Atty./Civil Chief
Office of the US Attorney
Western District of Missouri
Jeffrey.ray@usdoj.gov

                                        /s/ Rebecca M. Randles
                                        Attorney for Plaintiff