2026 WL 2364415
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Lori **SALAZAR**, Plaintiff,
v.
Brooke **ROLLINS**, in her capacity as Secretary of Agriculture, and the United States Department of Agriculture (Forest Service), an agency of the United States of America, Defendants.

Case No. 1:25-cv-00494-LF-DLM
|
Filed 08/14/2026

**Attorneys and Law Firms**

Edward Justin Pennington, Albuquerque, NM, for Plaintiff.

Peter Haynes, DOJ-United States Attorney's Office, Albuquerque, NM, for Defendants.

**MEMORANDUM OPINION AND ORDER**

LAURA FASHING, UNITED STATES MAGISTRATE JUDGE

***1** This matter comes before the Court on Defendants' Motion to Dismiss and Memorandum in Support, filed January 12, 2026 (Doc. 26), and Plaintiff's Motion to Amend Complaint, filed January 22, 2026 (Doc. 29). Both motions are fully briefed. Docs. 35, 36. Having reviewed the parties' submissions and the applicable law, the Court GRANTS the motion to amend (Doc. 29) and DENIES AS MOOT the motion to dismiss (Doc. 26).

## BACKGROUND

### I. Original Complaint (Doc. 1)

Ms. Salazar originally filed her complaint pro se, Doc. 1 at 1, but subsequently obtained counsel, Doc. 22. In Ms. Salazar's original complaint, she alleges that she is a Hispanic female who worked for the Forest Service Human Resources Management Facility ("HRMF"), a federal agency, in Albuquerque, New Mexico. Doc. 1 at 1, 3. "Despite her excellent performance," she claims she faced "recurring incidents of discrimination and retaliation by her managers and supervisors at the HRMF," including an unwarranted letter of reprimand from her supervisor, Mr. John Freeman, on December 2, 2024. *Id.* at 3. She believed that this letter of reprimand was discriminatory and filed a complaint of discrimination against Mr. Freeman. *Id.* Subsequently, Mr. Freeman "engaged in a series of adverse employment actions against Plaintiff." *Id.* at 3–4. In December 2016, Ms. Salazar applied for three promotions and did not receive any of them, which she believes was due to her complaint as well as her race and sex. *Id.* at 4. She filed another complaint of discrimination in January 2017 based on this non-selection, naming Mr. Freeman as the discriminating official, and afterward, Mr. Freeman "advised Plaintiff's work group that adverse action was taken against the entire work group because Plaintiff had filed a complaint of discrimination," which "negatively impacted Plaintiff's standing within her work group and caused her substantial injury." *Id.* She alleges two counts of Title VII violations (retaliation as well as race and sex discrimination). *Id.* at 5.


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**II. Proposed Amended Complaint (Doc. 29)**

On January 22, 2026, after obtaining counsel, Ms. Salazar moved to amend her complaint. Doc. 29. In her proposed amended complaint, she clarifies the procedural history of this case. Specifically, she alleges the following:

Ms. Salazar filed a formal complaint of discrimination on April 28, 2017, alleging both discrimination (on the basis of race and sex) and retaliation (for filing earlier discrimination complaints). Doc. 29 at 5. The defendants investigated her complaint and issued a Final Agency Decision on August 10, 2020, concluding that defendants had neither discriminated nor retaliated against Ms. Salazar. *Id.* at 6. Ms. Salazar appealed to the Equal Employment Opportunity Commission ("EEOC"), and the EEOC determined that defendants had not discriminated against Ms. Salazar but had retaliated against her because of her protected activity. *Id.* Neither party appealed this decision. *Id.* The EEOC remanded the matter to the defendants for remedial relief consistent with the EEOC's decision, and on remand, the defendants determined that Ms. Salazar should be awarded $1500.00 in compensatory damages for the retaliation but found that she was not entitled to attorney's fees. *Id.* Ms. Salazar appealed both decisions (the compensatory damages and the lack of entitlement to attorney's fees) to the EEOC, and the EEOC affirmed both decisions. *Id.* at 6–7. Ms. Salazar now challenges those EEOC decisions (the affirmation of compensatory damages and the affirmation of the agency's denial of attorney's fees) in federal court. *Id.*

## LEGAL STANDARD

***2** Federal Rule of Civil Procedure 15(a) governs amendments before trial. A party may amend once as a matter of course within twenty-one days after serving the complaint *or* within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(B). Amendments beyond this period require the court's permission or the consent of the opposing party. Fed. R. Civ. P. 15(a)(2).

## ANALYSIS

Here, Defendants moved to dismiss on January 12, 2026, Doc. 26, and Ms. Salazar moved to amend ten days later on January 22, 2026, Doc. 29. This is her first attempt to amend; she is amending a pleading to which a responsive pleading is required (that is, a complaint), and her amendment takes place within twenty-one days after service of a Rule 12(b) motion (the motion to dismiss). Ms. Salazar therefore has the right to amend as a matter of course pursuant to Rule 15(a)(1).

Further, even if Ms. Salazar had been required to seek leave to amend, the Court would grant it. Her original complaint was filed *pro se*, and she has since obtained counsel. Doc. 29 at 1; *see also* Doc. 22 (counsel's entry of appearance). Defendants argue that Ms. Salazar's motion to amend is futile. Doc. 32 at 2–3. The Court disagrees.

**I. Federal Employees and Title VII**

Federal employees who report workplace discrimination or retaliation in violation of Title VII follow a different administrative procedure than private sector employees. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1311 (10th Cir. 2005). Private sector employees normally are required to timely file a charge of discrimination or retaliation with the EEOC. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020). The EEOC may conduct an administrative investigation based on the contents of the charge, *id.*, and if the EEOC issues the employee a right-to-sue letter, the employee may then bring a Title VII claim against the employer in federal court, *see id.*

In the federal sector, the procedure differs. Federal employees first must contact an Equal Employment Opportunity ("EEO") counselor; if the federal employee still wishes to file a complaint after meeting with the counselor, she files a formal complaint with the agency that allegedly discriminated against her. 29 C.F.R. § 1614.105–06. If the complaint meets certain requirements,


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*id.* § 1614.107, it is investigated by the agency, *id.* § 1614.108, and the agency issues a final decision (a "Final Action"), *id.* § 1614.110. If the federal employee wishes to appeal this decision, she appeals to the EEOC. *Id.* § 1614.401. She then may appeal the EEOC's decision to federal court. *Id.* § 1614.407(c).[1] The authority for this appeal process is 42 U.S.C. § 2000e-16(c), which states that an aggrieved federal employee under such circumstances "may file a civil action as provided in section 2000e-5 of this title"—the statutory provision under which private employees bring federal actions under Title VII. *See* 42 U.S.C. § 2000e-5(f).

### II. Ms. Salazar's Procedural Posture and Request for Partial *De Novo* Review

Ms. Salazar alleges that she appealed defendants' decisions to the EEOC on two separate occasions: first, her appeal on the merits of the discrimination and retaliation claims (*see* Doc. 29 at 6 ¶ 10, in which the EEOC concluded that defendants had not discriminated but had retaliated), and second, her appeal regarding damages and attorney's fees (*see id.* at 6–7 ¶ 12, in which the EEOC affirmed the agency's decisions regarding both compensatory damages and attorney's fees). Neither party appealed the first EEOC decision (on the merits), so Ms. Salazar argues that that decision is final and that this Court lacks jurisdiction to alter the results of the EEOC's adjudication: from her perspective, the ruling that defendants did not discriminate but did retaliate is settled and cannot be re-litigated. Doc. 34 at 4. But, Ms. Salazar argues, she did appeal the second EEOC decision (regarding damages and attorney's fees), and she claims she is entitled to a *de novo* review on these issues without disturbing the merits. *See id.* at 6.

***3** The Tenth Circuit case most on point is *Timmons v. White*, 314 F.3d 1229 (10th Cir. 2003). In *Timmons*, the plaintiff worked for the McAlester Army Ammunition Plant. *Id.* at 1230. He filed a formal complaint with the Department of the Army alleging that he was discriminated against. *Id.* The Department of the Army investigated and held a hearing, after which it concluded that there had been no discrimination. *Id.* The plaintiff then appealed to the EEOC, which concluded that he *was* discriminated against based on disability. *Id.* at 1230–31. In its final order, the EEOC ordered a correction of records, back pay, and other benefits for the time period at issue. *Id.* at 1231. The plaintiff then filed a petition for enforcement with the EEOC claiming that his back pay was improperly calculated and that he was entitled to be promoted; the EEOC granted this petition with respect to back pay but denied it with respect to promotion. *Id.* Finally, the plaintiff filed a second petition for enforcement, again claiming that the back pay calculations were improper; the EEOC denied this petition and held that the Department of the Army was in full compliance with the EEOC's final order. *Id.* The plaintiff then sued in federal court, seeking reinstatement and continuation of back pay beyond the period the EEOC had ordered. *Id.* The plaintiff moved for partial summary judgment on the issue of liability: he sought *de novo* review of the remedy but argued that the EEOC's finding of liability was binding on the defendant. *Id.*

The Tenth Circuit held that the plaintiff's action was a civil action under 42 U.S.C. § 2000e-16(c). *Id.* at 1232.[2] It stated that, pursuant to Supreme Court precedent, the "civil action" referred to in § 2000e-16(c) was a "de novo 'civil action' equivalent to that enjoyed by private-sector employees." *Id.* at 1233 (quoting *Chandler v. Roudebush*, 425 U.S. 840, 863 (1976)). The Tenth Circuit reviewed the meaning of "trial *de novo*" and concluded that it meant a fully independent review: "we hold that a plaintiff who has brought a civil action under § 2000e-16(c) is not entitled to limit the district court's review to the issue of remedy only." *Id.* at 1234. It goes on to state that "[a]lthough the government is bound by a prior finding of discrimination where a plaintiff brings an action to *enforce* an EEOC decision ... or where the plaintiff does not appeal the EEOC's ruling, it does not follow that a defendant is similarly bound where a plaintiff elects to proceed under § 2000e-16(c)." *Id.*

Ms. Salazar argues that the Tenth Circuit's language leaves room to distinguish her case: whereas in *Timmons*, the plaintiff appealed each and every EEOC decision, the same is not true of Ms. Salazar, who did not appeal the initial EEOC decision on liability. She also cites to *Haskins v. United States Department of the Army*, which states,

> If a federal employee has received a favorable determination at the administrative level, he or she is able to go into federal court to enforce that order without risking de novo review of the merits. Thus, the employing agency cannot challenge issues decided against it if the plaintiff does not seek de novo review. However, a plaintiff is entitled to a de novo hearing if requested.

808 F.2d 1192, 1199 n.4 (6th Cir. 1987). But Ms. Salazar's attempt to distinguish *Timmons* is unpersuasive. As the Court interprets *Timmons*, the language emphasizing the finality of the EEOC's conclusions on liability "where the plaintiff does not


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

appeal the EEOC's ruling" refers to instances in which the plaintiff did not file a federal court appeal under § 2000e-16(c) (or appeal to the EEOC) at all, not instances in which the plaintiff challenges some portions of the EEOC's ruling but tries to leave others undisturbed.

This conclusion reads more harmoniously with the rest of the Tenth Circuit's opinion, which speaks of the *de novo* trial under § 2000e-16(c) in broad strokes. *Timmons* refers to a trial *de novo* as "a fresh, independent determination of 'the matter' at stake." 314 F.3d at 1233–34. It states that "a plaintiff who has brought a civil action under § 2000e-16(c) is not entitled to limit the district court's review to the issue of remedy only," without a discussion of what aspects of the underlying administrative record may have been challenged before that point. *Id.* at 1234. It refers to the Supreme Court's language in *Chandler*, which discussed the evidentiary value the EEOC's findings may have at a "federal-sector trial de novo," suggesting that such findings were not binding on the federal court. *Id.* at 1234–35. *Timmons* also interpreted the language of 42 U.S.C. § 2000e-5(g)(1), which "conditions an award of relief in an employment discrimination action on a finding by the court that the defendant engaged in the unlawful employment practice at issue"—that is, the district court "cannot award new relief, or expand the relief already awarded, without first determining for itself whether the alleged discrimination has occurred." *Id.* at 1235. Because § 2000e-16(c) allows a federal employee *de novo* review in federal court pursuant to the provisions of § 2000e-5(f)–(k), *see* § 2000e-16(d), this conditioning of the district court's ability to award relief applies in full force to federal employees. *See id.* ("Because a private-sector employee must first secure a finding by the district court that discrimination has occurred before obtaining appropriate relief, and because § 2000e-16(d) makes civil actions brought by aggrieved federal employees under § 2000e-16(c) subject to that same requirement, we believe that a federal employee proceeding under § 2000e-16(c) must do the same.") In short, the Tenth Circuit's language and reasoning do not suggest that it would parse apart the issues in the way Ms. Salazar suggests at a *de novo* trial, even recognizing that the EEOC decision finding retaliation in this case was not appealed by either party.

***4** In addition to the Tenth Circuit, the Third, Fourth, Fifth, Eleventh, and D.C. Circuits all have issued decisions concluding that partial *de novo* review is not permissible under Title VII. *Morris v. Rumsfeld*, 420 F.3d 287, 294 (3d Cir. 2005) ("We hold that, when a federal employee comes to court to challenge, in whole or in part, the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo*, and is not bound by the results of the administrative process, whether that process culminated in one administrative decision, or in two or more decisions."); *Larber v. Harvey*, 438 F.3d 404, 423 (4th Cir. 2006) (overruling *Pecker v. Heckler*, 801 F.2d 709 (4th Cir. 1986) to conclude that "in order properly to claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue"); *Massengill v. Nicholson*, 496 F.3d 382, 385 (5th Cir. 2007) (agreeing with "weight of authority" in other circuit courts to conclude that federal employee plaintiff cannot seek partial *de novo* review under Title VII); *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005) ("As such, under the better approach adopted by the Third, Tenth, and D.C. Circuits, we reject Ellis's argument that he is entitled to a *de novo* review (by a jury) limited to the question of damages."); *Scott v. Johanns*, 409 F.3d 466, 471–72 (D.C. Cir. 2005) ("Under Title VII, federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying de novo both liability and remedy. They may not, however, seek de novo review of just the remedial award."); *but see Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995).

Based on binding precedent in *Timmons* and persuasive authority from several other circuits, the Court concludes that Ms. Salazar may not restrict the issue in this case to damages and attorney's fees; pursuant to 42 U.S.C. § 2000e-16(c) and the related statutory provisions discussed above, she places the issue of liability in question as well.

### III. Sufficiency of the Amended Complaint

Having established that Ms. Salazar must prove retaliation *de novo*, the Court looks to the allegations of retaliation in the Amended Complaint. Defendants challenge whether Ms. Salazar pleads the elements of a prima facie case of retaliation under the three-part framework in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). But the *McDonnell Douglas* test "is inapplicable where the plaintiff presents direct evidence of discrimination" or retaliation. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008); *Fye v. Okla. Corp.*


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*Comm'n*, 516 F.3d 1217, 1225 ("If, however, the plaintiff is unable to directly establish that retaliation played a motivating part in the employment decision at issue, she may rely on the familiar three-part *McDonnell Douglas* framework ...."). Here, Ms. Salazar pleads direct retaliation, not circumstantial: "[O]n February 1, 2017, Plaintiff learned from a coworker that [Mr.] Freeman told coworkers that he was withdrawing prior authority allowing Plaintiff and her work unit to perform remote work *because Plaintiff had filed discrimination complaints against him*. Freeman subsequently admitted to Defendants' investigators that he made this statement, and the withdrawal of remote work permission in fact occurred." Doc. 29 at 9.

Defendants argue that "revocation of remote work privileges is not retaliatory within the meaning of Title VII." Doc. 32 at 3. The Supreme Court has held that the antiretaliation provision of Title VII requires a plaintiff to demonstrate "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The Supreme Court emphasized the importance of separating "significant from trivial harms" and clarified that Title VII prohibits "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," which typically do not include "petty slights, minor annoyances, and simple lack of good manners." *Id.* In *White*, the Supreme Court found that a change of job duties "from forklift duty to standard track laborer tasks" could suffice as a retaliatory action when the track laborer duties were "more arduous and dirtier," the forklift operator position was more prestigious, and other employees resented the plaintiff for occupying the forklift operator position because it was "objectively considered a better job." *Id.* at 71. "Whether a particular reassignment is materially adverse depends on the circumstances of the particular case and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation marks omitted). A more recent Supreme Court case noted that Title VII's retaliation standard is not identical to its standard for substantive discrimination. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 357–58 (2024).

***5** Here, the Court finds that Mr. Freeman's statement to coworkers that he was withdrawing a work privilege previously enjoyed by Ms. Salazar and her work unit because Ms. Salazar had filed discrimination complaints likely would deter other employees from making a discrimination complaint in the future. The Court finds that under this standard, the revocation of remote work authorization may deter other employees from making a discrimination complaint; remote work authorization demonstrates an employer's trust in its employees to perform their work under less immediate scrutiny, suggesting an element of prestige, and remote work also allows employees a degree of flexibility not always found in an in-person workplace. Defendants' citation to *Weil v. Carecore Nat'l, LLC*, 833 F. Supp. 2d 1289, 1298 (D. Colo. 2011) is not persuasive because, despite the case citing *White* for the legal standard discussed above, its analysis does not discuss whether a reasonable person in the plaintiff's position might have been dissuaded from making discrimination complaints in the future.

Defendants also argue that Ms. Salazar fails to allege certain details of the remote work arrangement. Doc. 32 at 6. But Ms. Salazar is not required to prove her entire case at the pleading stage; rather, she merely needs to allege facts sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ms. Salazar has alleged that she and her work group had remote work authorization, that she made complaints of discrimination against her supervisor, that her supervisor told her coworkers that he was revoking the entire group's remote work authorization because of Ms. Salazar's complaints, and that he did in fact revoke the group's remote work authorization. Doc. 29 at 9. These facts permit the reasonable inference that Mr. Freeman retaliated against Ms. Salazar for her complaints of discrimination in violation of Title VII by revoking work authorization for her team. They therefore are sufficient at the pleading stage.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Ms. Salazar's motion to amend (Doc. 29) and DENIES AS MOOT Defendants' motion to dismiss (Doc. 26). Ms. Salazar is ordered to file her amended complaint as a separate docket entry no later than FOURTEEN DAYS from the entry of this Memorandum Opinion and Order.


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

It is so ordered.

**All Citations**

Slip Copy, 2026 WL 2364415

Footnotes

1 Other avenues to federal court also exist at different points in the proceedings. *See generally id.* § 1614.407.

2 *Timmons* involved a dispute over whether the suit was an "enforcement action" pursuant to 29 C.F.R. § 1614.503(g)—a suit by a complainant who seeks to force her employer to comply with an EEOC order—or a civil action under § 2000e-16(c). No such dispute exists here; Ms. Salazar has made clear that she seeks a different remedy than the one the EEOC affirmed (for $1,500.00 and no attorney's fees), so the suit plainly does not seek to enforce what the EEOC has ordered.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.


WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.